## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA                 :
*ex rel.* LORI MORSELL, *et al.*,         :
                                          :
      Plaintiffs,          :          Civil Action No.:       12-800 (RC)
                                          :
      v.                   :          Re Document No.:        200
                                          :
NORTONLIFELOCK, INC.                      :
(f/k/a SYMANTEC CORPORATION),             :
                                          :
      Defendant.           :

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

## I. INTRODUCTION

Defendant NortonLifeLock Incorporated ("Norton")[1] seeks reconsideration of three

aspects of the Court's earlier summary judgment rulings regarding the Federal Government's

("Government") Federal False Claims Act ("FCA") claims and the related state claims of

California, Florida, and Relator Morsell on behalf of New York (collectively, "the States").

Specifically, Norton argues "that the Court's opinion (1) failed to properly apply the binding

standard set by the Supreme Court in *Universal Health Systems, Inc. v. U.S. ex rel. Escobar*, 136

S. Ct. 1989 (2016), to its analysis of the FCA element of materiality; and (2) failed to apply

correctly the controlling precedent of this Circuit in *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d

281 (D.C. Cir. 2015), to its analysis of the FCA element of scienter."  Mot. for Recons. at 1, ECF

---

[1] The Court stated in its opinion regarding motions for summary judgment that it would refer to the company previously known as Symantec Corporation by its new name going forward.  *United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 266 n.1 (D.D.C. 2020).  However, the Court has not replaced instances of "Symantec" in quotations.

No. 200.  For the reasons given below, the Court holds that Norton's motion does not meet the standard for reconsideration, and therefore is denied.

## II.  BACKGROUND

Because this is a motion for reconsideration, the relevant background is the same as the background from the opinion Norton asks the Court to reconsider.  *See United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 267–76 (D.D.C. 2020).  To summarize, the Government and the States claim that Norton violated the FCA, common law, state false claims acts, and state contract law when, "in the process of setting pre-negotiated maximum prices for government purchasers with the General Services Administration, Symantec overcharged them by misrepresenting the existence of certain prices and discounts that were available to Symantec's private customers and by consequently failing to offer government purchasers the same low prices these customers received."  *Id.* at 267.  Norton was "required to make certain representations and to provide details about their discounting policies" in their Commercial Sales Practices Format ("CSPs") disclosures, *id.* at 269, which were part of Norton's contract, *see id.* at 281–82.  Norton's contract also contained a Price Reduction Clause ("PRC"), which "ensures that the Government's prices are reduced if [an agreed-upon] customer or category of customers is given lower pricing or increased discounts."  *Id.* at 270.  The Government's claims at issue in this motion concern alleged falsities regarding Norton's CSPs and PRC.

The Court ruled on the parties' motions for summary judgment on March 30, 2020.  Among other rulings, the Court denied Norton's motion for summary judgment that the CSPs and PRC were not material under the FCA, denied Norton's motion for summary judgment that Norton lacked knowledge of the falsities regarding its CSPs and PRC under the FCA, and denied Norton's motions for summary judgment on the States' claims.

Norton now moves for reconsideration of these rulings, arguing that the Court incorrectly denied summary judgment on the Government's claims regarding materiality and knowledge due to "misapplication of Supreme Court precedent in *Escobar* and Circuit precedent in *Purcell*," and that the States' claims fail for the same reasons because they "are derivative of the government's federal FCA claims" and also because the States' claims "depend on additional and separate evidence that neither the States nor the Relator have identified in the record."  Mem. Supp. Mot. for Recons. ("Mem.") at 7, ECF No. 200-1.  The motion has been fully briefed.  *See* United States' Opp'n Mot. for Recons., ECF No. 202; States' Opp'n Mot. for Recons., ECF No. 203; Reply to United States' Opp'n ("Reply"), ECF No. 204; Reply to States' Opp'n, ECF No. 205.

## III.  LEGAL STANDARD

"Federal Rule of Civil Procedure 54(b) [('Rule 54(b)')] governs reconsideration of orders that do not constitute final judgments in a case."  *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)).  Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"—that is, any order of interlocutory judgment—"may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Relief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is within the discretion of the district court, *see Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.D.C. 2003), and may be entered "as justice requires," *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223 (D.D.C. 2011) (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000)).  "'As justice requires' indicates concrete considerations of whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt

by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.'" *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.'" *Singh*, 383 F. Supp. 2d at 101 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). As such, "[i]n general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)). A court's discretion to grant a Rule 54(b) motion, however, is "limited by the law of the case doctrine and 'subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Judicial Watch v. U.S. Dep't of the Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (quoting *Singh*, 383 F. Supp. 2d at 101).

Summary judgment is appropriate only where the summary judgment "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380

(2007).  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In determining whether a genuine issue exists, a court must refrain from making credibility determinations or weighing the evidence; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255; *see also Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).  "In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute."  *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16, 19–20 (D.D.C. 2016) (citing Fed. R. Civ. P. 56(c)(1)).

## IV.  ANALYSIS

Norton suggests several potential legal justifications for Rule 54(b) reconsideration of the Court's prior summary judgment rulings, but only one of those merits significant analysis.  First, Norton argues that reconsideration is justified "to correct 'error in [the Court] failing to consider controlling decisions.'"  Reply at 4 (quoting *Bayshore Cmty. Hosp. v. Azar*, 325 F. Supp. 3d 18, 22 (D.D.C. 2018)).  This is the only ground for reconsideration that Norton advances with any particularity.  Norton argues that "[u]nder the Supreme Court's holding in *Escobar* and the D.C. Circuit's holding in *Purcell*, the government has failed to meet its burden of proof regarding the elements of materiality and scienter, necessary elements of its FCA claims as to which it bears the burden of proof at summary judgment and at trial."[2]  Mem. at 9.  Norton also argues that the

---

[2] Norton argues repeatedly that "the Court's holdings . . . reflect a misapplication of the summary judgment standard."  *E.g.*, Mem. at 18 n.7.  For reasons discussed in this section, this alone would not justify reconsideration even if true.  Regardless, the Court disagrees.  For

State claims fail for the same reasons because they "are derivative of the government's federal FCA claims." Mem. at 7. Norton therefore asserts that the Court failed to consider two supposedly controlling decisions. Because failing to consider controlling decisions is a sufficient ground for reconsideration, the Court analyzes the sufficiency of this argument below.

Second, Norton argues that reconsideration is justified to ensure the "proper application of controlling D.C. Circuit and Supreme Court authorities." Reply at 4; *see also* Mot. for Recons. at 1 (arguing that the Court "failed to properly apply" controlling precedent). However, the Court does not believe that reconsideration is appropriate merely because a party seeks the "proper application of controlling . . . authorities." Reply at 4. Norton cites no authority supporting Rule 54(b) reconsideration merely for misapplication of precedent. Such an interpretation of the Rule 54(b) standard would be in tension with the stricter standard described above: "fail[ure] to *consider* controlling decisions." *Bayshore Cmty. Hosp.*, 325 F. Supp. 3d at 22 (emphasis added). It would also be in tension with the Court's admonition that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Judicial Watch*, 466 F. Supp. 2d at 123 (quoting *Singh*, 383 F. Supp. 2d at 101). Were the Court to allow reconsideration merely to re-analyze and re-apply precedent, Norton would indeed have been granted the opportunity to battle for the court's decision again. "[D]isagreeing with a court's answer to an argument is not proper cause to pursue reconsideration; that is better left to the appellate process." *Talbot v. U.S. Dep't of*

---

example, Norton argues that some of the Government's claims should not have survived summary judgment because the Court recognized that "[t]he Government has yet to establish [that false disclosures were the basis of its prices]." *Id.* (second alteration in original) (quoting *Symantec*, 471 F. Supp. 3d at 296). But the immediately preceding sentences clarify that "genuine issues of material fact preclude summary judgment." *Id.* No other example of the Court's supposed misapplication of the summary judgment standard is convincing.

*State*, 373 F. Supp. 3d 212, 220 (D.D.C. 2018).  The Court therefore will not consider this supposed ground for reconsideration.

Third, Norton argues in reply that the Court has discretion to reconsider its own interlocutory decisions even when Rule 54(b) is not met.  Reply at 4 n.1.  Given Norton raised this ground for reconsideration for the first time in reply, the Court will not consider it now.  *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments . . . or provide the non-movant an opportunity to respond."), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008).

Fourth, Norton states that reconsideration is justified if a court "patently misunderstood the parties."  Mem. at 8 (quoting *Bayshore Cmty. Hosp.*, 325 F. Supp. 3d at 22).  But Norton does not advance any argument that the Court misunderstood the parties.  *See, e.g.*, Mem. at 1 (arguing in brief's first paragraph that "[t]he Court's findings and conclusions . . . did not properly apply the controlling authorities of this Circuit and of the Supreme Court," without mentioning anything about misunderstanding the parties).  The Court will not consider this ground for reconsideration.

Norton's motion for reconsideration will therefore only be justified "to correct 'error in [the Court] failing to consider controlling decisions.'"  Reply at 4 (quoting *Bayshore Cmty. Hosp.*, 325 F. Supp. 3d at 22).  As discussed below, the Court holds that Norton has not shown that the Court failed to consider any controlling decisions in its summary judgment opinion regarding the materiality or knowledge elements of the FCA claims.

### A. Materiality

Norton argues that the Government produced no sufficient evidence of materiality as required by *Escobar*, and therefore that Norton is entitled to summary judgment on materiality. Mot at 9. Norton's motion fails on this issue because the Court already applied *Escobar* to find sufficient evidence of materiality to prevent summary judgment in Norton's favor. The Court explicitly considered *Escobar* and Norton's related arguments:

> The Court's decision on the motion to dismiss predated *Escobar*, but nothing the Supreme Court said in that case changes the analysis here. Symantec seems to argue otherwise and to suggest that the Government has asserted the kind of "per se materiality" forbidden by *Escobar*. . . . If, in the course of litigation, it turns out that the misrepresentations the Government can actually prove are only "minor or insubstantial," Symantec can renew the argument that *Escobar* requires more for materiality. As it stands now, though, the misrepresentations that remain the subject of genuine disputes are substantial enough to meet the materiality threshold.

*Symantec*, 471 F. Supp. 3d at 263–64 (citation omitted). Norton therefore fails to show that the Court failed to consider controlling decisions by not considering *Escobar*.

Although that could be the end of the inquiry for materiality, to be thorough the Court will also analyze whether the Court failed to previously consider certain aspects of *Escobar*, rather than the decision as a whole. As explained below, Norton fails to identify aspects of *Escobar* that the Court failed to consider because Norton points to two supposed requirements that are not actually required by *Escobar*.

First, Norton argues that the Government must identify evidence of its *actual* contracting or payment decisions to prevent summary judgment on materiality. *See, e.g.*, Mem. at 9 ("the government presented no evidence regarding the government's actual contracting or payment decisions"); Mem. at 10 ("Rather, the government must prove materiality with evidence that the government would not have paid the allegedly false claim if it had known of its alleged falsity"); Reply at 6 ("Under any theory of liability, the FCA requires the plaintiff to adduce evidence that

the alleged falsity in the subject claims *actually affected the government's decision making*.");
Reply at 8 ("This is entirely consistent with the central teaching of *Escobar* that materiality
requires a showing of actual effect on government decision making.").  But *Escobar* does not
require such a showing.

> We need not decide whether § 3729(a)(1)(A)'s materiality requirement is
> governed by § 3729(b)(4) or derived directly from the common law.  Under any
> understanding of the concept, materiality "look[s] to the effect on the *likely or
> actual behavior* of the recipient of the alleged misrepresentation."  26 R. Lord,
> Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston).  In tort law, for
> instance, a "matter is material" in only two circumstances: (1) "[if] a reasonable
> man would attach importance to [it] in determining his choice of action in the
> transaction"; or (2) if the defendant knew or had reason to know that the recipient
> of the representation attaches importance to the specific matter "in determining
> his choice of action," even though a reasonable person would not. Restatement
> (Second) of Torts § 538, at 80.

*Escobar*, 136 S. Ct. at 2002–03 (italics added; other alterations in original).  If materiality looks
to the effect on the "likely" behavior of the recipient, it cannot always require evidence of actual
effect.  Similarly, the above-referenced statute does not require demonstrating effect on actual
contracting or payment decisions: "[T]he term 'material' means having a natural tendency to
influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C.
§ 3729(b)(4).  Norton does not cite any support for its claim that "the government must prove
materiality with evidence that the government would not have paid the allegedly false claim if it
had known of its alleged falsity."  Mem. at 10.

The D.C. Circuit recently confirmed this understanding.  In analyzing whether a relator
adequately pleaded materiality for a fraudulent inducement claim regarding sales of software
licenses to the IRS, the court explained that "[i]t is . . . plausible that the IRS could have later
learned of IBM's fraud and continued to pay for the licenses for any number of reasons that do
not render IBM's fraud immaterial."  *United States ex rel. Cimino v. Int'l Bus. Machines Corp.*,
No. 19-cv-7139, 2021 WL 2799946, at *8 (D.C. Cir. July 6, 2021).  The court continued, stating

that "[a]t a later stage in the litigation, evidence of the IRS's continued payment under the license agreement *might* be used to demonstrate that IBM's false audit was not material to the IRS." *Id.* (emphasis added).  This refutes Norton's argument that "the government must prove materiality with evidence that the government would not have paid the allegedly false claim if it had known of its alleged falsity," Mem. at 10, by acknowledging that evidence of the IRS continuing to pay under a contract that it knew was induced by fraud merely *might* demonstrate materiality, *Cimino*, 2021 WL 2799946, at *8.

Norton argues for a meaning of materiality closer to that of causation, but "materiality and causation are not the same." *Id.* at *5.  Materiality concerns the natural tendency or capability to influence, while causation concerns whether the falsity in fact caused the result. *See id.*  As the D.C. Circuit recently explained using the example of fraudulent inducement, "a statement could be material—that is, capable of influencing the government's decision to enter a contract—without causing the government to do so." *Id.*  Under Norton's interpretation that materiality requires proving that the Government would not have paid a false claim if it had known of the falsity, materiality would essentially be the same as causation.

Norton cites *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027 (D.C. Cir. 2017), to support its argument that the Government was required to provide evidence of "their actual contracting decisions based on the alleged omissions."  Mem. at 12 (citing *McBride*, 848 F.3d 1029).  But *McBride* does not dictate that requirement.  The relator in *McBride* alleged that the defendant "may have used inflated headcounts to justify excessive staffing levels" that in turn led to unreasonable costs.  *McBride*, 848 F.3d at 1033.  But the relator did "not actually set out to prove that staffing was excessive or costs were 'unreasonable,'" relying instead on "[t]he assumption . . . that accurate headcount data was relevant to determining the reasonableness of

costs" and testimony that a contracting officer "'might' have investigated further had he known false head counts were being maintained, and that such an investigation 'might' have resulted in some charged costs being disallowed." *Id.* In opposition, the defendant proffered evidence that headcount had not initially been used to make staffing decisions and that "headcount data . . . had no bearing on costs." *Id.* The court concluded that "[a]bsent any connection between headcounts and cost determinations," the relator had failed to proffer sufficient evidence of materiality to avoid summary judgment. *Id.*

Nowhere does *McBride* say that materiality must be shown by evidence of actual contracting decisions. In fact, the court quoted *Escobar*'s guidance that materiality "look[s] to the effect on the likely or *actual* behavior of the recipient of the alleged misrepresentation." *Id.* at 1032 (quoting *Escobar*, 136 S. Ct. at 2002). The court emphasized "actual" because there was evidence that the government continued to pay even after learning of the allegations and did not disallow any charges after an investigation. *Id.* at 1034. If evidence of actual behavior was always necessary, there would have been no reason to specifically call out "actual behavior" because it would have been the only relevant type of evidence. *See id.* at 1032 ("[C]ourts need not opine in the abstract *when the record offers insight into the Government's actual payment decisions*." (emphasis added)). The defect in the relator's evidence in *McBride* instead related to the lack of "any connection between headcounts and cost determinations," *id.* at 1033, discussed further below.

Second, Norton argues that the Court erred by treating certain contract terms as *per se* material. *See, e.g.*, Mem. at 18 ("The government's arguments on materiality, both in opposition to Symantec's motion and in support of its own, and the Court's acceptance of those arguments, commit the very analytical error against which *Escobar* warns—application of a *per se*

materiality standard based solely on the terms of applicable regulations, contracts, or conditions of payment.").  At the outset, this argument fails to justify reconsideration because the Court explicitly acknowledged this same argument previously made by Norton.  In its summary judgment opinion, the Court noted that "Symantec seems to argue . . . that the Government has asserted the kind of '*per se* materiality' forbidden by *Escobar*."  *Symantec*, 471 F. Supp. 3d at 302.  The Court acknowledged that *Escobar* held that "'statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment' and that '[t]he materiality standard is demanding.'"  *Id.* (alteration in original) (quoting *Escobar*, 136 S. Ct. at 2001, 2003).  But the Court then held that "[i]n this case, the Government has met that standard because its allegations against Symantec are more than 'garden-variety breaches of contract or regulatory violations.'"  *Id.* (quoting *Escobar*, 136 S. Ct. at 2003).  Because the Court already scrutinized Norton's *per se* materiality argument based on *Escobar*, the Court did not fail to consider controlling authority.  Reconsideration is therefore not justified on this ground.

Norton's argument is also based on an incorrect reading of *Escobar*.  The Supreme Court in *Escobar* did not hold that materiality can never be found through "the Court's reading of the relevant contract requirements."  Mem. at 11.  The Court in *Escobar* held that "statutory, regulatory, and contractual requirements are not *automatically* material, even if they are labeled conditions of payment."  *Escobar*, 136 S. Ct. at 2001 (emphasis added).  "[G]arden-variety breaches of contract or regulatory violations" are not material.  *Id.* at 2003.  Merely having "the option to decline to pay" due to certain noncompliance is not alone proof of materiality.  *Id.* Noncompliance that is "minor or insubstantial" is not material.  *Id.* Taking these together, the Court was refuting the notion that every violation that could hypothetically justify nonpayment is necessarily and automatically material.  *See id.* ("[T]he Government's decision to expressly

identify a provision as a condition of payment is relevant, but not automatically dispositive.").
The Court was not saying that materiality can never be found by analyzing statutory, regulatory,
or contractual provisions.

Under this reading of *Escobar*, the Court sees no aspect of *Escobar* that it failed to
consider that could justify reconsideration.  Although not every contractual provision that could
justify nonpayment is material, the Court remains convinced that the record supported denying
Norton's motion for summary judgment.  Namely, the record shows that the provisions at issue
are important enough to the Government's contracting and payment decisions such that Norton
has not shown beyond any genuine dispute of material fact that Norton's alleged falsities relating
to those provisions were immaterial.  *See, e.g.*, *Symantec*, 471 F. Supp. 3d at 302 ("CSP
disclosure obligations are integrally connected to the Government's determinations of what it
will pay on a MAS schedule contract."); *id.* at 303 ("The very existence of the CSPs disclosure
requirements and the GSAM's instructions to incorporate them into every MAS Schedule
contract that GSA negotiates suggests that they will have at least some influence in shaping
GSA's decisions."); *id.* at 304 ("PRC violations would necessarily have been material to
payments, because regardless of the precise details of how the price-discount relationship would
be calculated, the entire point of the PRC was to require price reductions when appropriate.  If
prices were not properly reduced when required under the PRC, this would obviously and
necessarily be material to overpayments by the plaintiffs.").

*McBride* is distinguishable on this issue.  Norton argues that the court in *McBride* held
"that the plaintiff adduced no evidence of materiality beyond the regulatory and statutory text
establishing a condition of payment."  Mem. at 12.  But the problem with the *McBride* relator's
evidence was not sole reliance on "regulatory and statutory text."  As discussed above, the

problem in *McBride* was that the relator alleged that the defendant "may have used inflated headcounts to justify excessive staffing levels" that in turn led to unreasonable costs, but did "not actually set out to prove that staffing was excessive or costs were 'unreasonable,'" relying instead on "[t]he assumption . . . that accurate headcount data was relevant to determining the reasonableness of costs" and testimony that a contracting officer "'might' have investigated further had he known false head counts were being maintained, and that such an investigation 'might' have resulted in some charged costs being disallowed." *Id.* The court concluded that "[a]bsent any connection between headcounts and cost determinations," the relator had failed to proffer sufficient evidence of materiality to avoid summary judgment. *Id. McBride* does not say that reliance on statutory, regulatory, or contractual terms can never be sufficient.

Here, in contrast to *McBride*, there is no difficulty seeing "any connection" between the alleged falsities and the likely contracting or payment behavior of the Government. "CSP disclosure obligations are integrally connected to the Government's determinations of what it will pay on a MAS schedule contract." *Symantec*, 471 F. Supp. 3d at 302. "[T]he entire point of the PRC was to require price reductions when appropriate." *Id.* at 304. Unlike in *McBride*, where the relator provided essentially no evidence connecting headcount to billed costs despite government evidence that "headcount data . . . had no bearing on costs billed to the Government," 848 F.3d at 1033, here, the CSPs and PRC are directly related to setting contract price.[3]

---

[3] Norton advances other arguments that clearly do not meet the standard for reconsideration. For example, Norton argues that the Government failed to produce any evidence of materiality—and that Norton therefore should have been granted summary judgment—because "the Court's opinion recognized undisputed evidence that the challenged disclosures did not influence the government's ultimate payment or contracting decisions." Mem. at 14. There is no argument that this supposed error was caused by a failure of the Court to consider controlling authority. Even under Norton's incorrect reading of *Escobar* that would

*   *   *

Because Norton has not shown any aspect of a controlling decision related to materiality that the Court failed to consider in its summary judgement opinion, Norton's motion for reconsideration is denied with respect to materiality.

### B.  Scienter

Norton argues "that the Court's holding regarding the element of scienter under the FCA . . . directly contravened [the] binding Circuit precedent" of *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281 (D.C. Cir. 2015).  Mem. at 19.  As with materiality, the Court would be justified in denying reconsideration merely because the Court already considered *Purcell* in its summary judgment opinion in relation to scienter:

> Symantec argues that because the PRC is ambiguous, it escapes liability because the undisputed material facts show that it interpreted the ambiguous clause in a reasonable way and was never warned away from that interpretation.  Sym. MSJ at 53–54 (citing *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 283–89 (D.C. Cir. 2015)). . . .  Merely putting forward a reasonable alternative interpretation of the text, however, is not enough, as it only shows facial ambiguity.

*Symantec*, 471 F. Supp. 3d at 304.  Norton therefore fails to show that the Court failed to consider controlling decisions by not considering *Purcell*.

As with materiality, that could be the end of the inquiry for scienter for this motion for reconsideration.  To be thorough, the Court also now analyzes whether the Court failed to

---

require evidence of how the Government's actual payment decisions were affected, Norton ignores that the Court found the evidence to be disputed.  *Compare* Mem. at 15 ("[T]he Court noted undisputed evidence that the contracting officer in this case had specifically determined, based on her own outside 'market research,' that the pricing structure under the Company's contract was, in fact, fair and reasonable." (quoting *Symantec*, 471 F. Supp. 3d at 302)), *with Symantec*, 471 F. Supp. 3d at 302 (explaining that even though contracting officer conducted independent research and concluded that prices were fair and reasonable, "[n]othing about the language of the Pre-Negotiation Memorandum suggests that this independent research was relied on to the exclusion of the CSPs").

previously consider certain aspects of *Purcell*, rather than the decision as a whole.  Norton fails

to identify aspects of *Purcell* that the Court failed to consider because Norton points to a

misunderstanding of *Purcell*.

"To be liable under the FCA, a defendant must have made the false claims knowingly."

*Purcell*, 807 F.3d at 287.  A defendant has not acted knowingly if it made "an innocent, good-

faith mistake about the meaning of an applicable rule or regulation," or acted "based on

reasonable but erroneous interpretations of a defendant's legal obligations."  *Id.* at 287–88.  Even

if a defendant held a reasonable interpretation, "a jury might still find knowledge if there is

interpretive guidance 'that might have warned [the defendant] away from the view it took.'"  *Id.*

at 288 (alteration in original) (quoting *United States ex rel. K & R Ltd. P'ship v. Massachusetts*

*Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008)).

Norton argues that "a defendant is entitled to summary judgment on the element of

scienter if there is no genuine dispute that (1) the contractual terms upon which the alleged FCA

violations are premised are ambiguous, (2) the defendant's interpretation of those ambiguous

terms is objectively reasonable, and (3) the government fails to identify evidence that it warned

the defendant away from that reasonable interpretation."  Mem. at 20.  According to Norton, it

was entitled to summary judgment because all of these were met.  *See* Mem. at 20–21.  Norton

argues that the Court erred with respect to element two when it based its summary judgment

opinion in part upon the requirement that a defendant's interpretation be held

contemporaneously.

Norton argues that under *Purcell*, "the timing of the defendant's interpretation—and the

defendant's subjective intent—are irrelevant."  Mem. at 20 (citing *Purcell*, 807 F.3d at 290); *see*

*also* Mem. at 23 n.9 ("*Purcell* does not require a showing that the defendant held its reasonable

interpretation of the ambiguous contract provision at the time the contract was formed."); Reply at 22 ("If subjective intent is irrelevant, so must be the question of when that intent was formed.").  The Court previously denied summary judgment for Norton in part due to genuine disputes of material fact regarding whether Norton "held its favored interpretations at the time the contract was formed."  *Symantec*, 471 F. Supp. 3d at 305.  Norton is therefore arguing that the Court failed to consider *Purcell* because the Court added a contemporaneity requirement that "*Purcell* does not require."  Mem. at 23 n.9.

Reconsideration is not justified on this issue because the Court previously considered this question and Norton cites no controlling authority to the contrary.  The Court previously stated that "a claimant cannot avoid liability by manufacturing an after-the-fact reasonable interpretation of an ambiguous provision."  *Symantec*, 471 F. Supp. 3d at 305 (quoting *United States ex rel. Bahnsen v. Boston Sci. Neuormodulation Corp.*, No. 11-cv-1210, 2017 WL 6403864, at *9 (D.N.J. Dec. 15, 2017)).[4]  Norton claims that *Purcell* "definitively rejected this requirement" of contemporaneity.  Reply at 22.  But *Purcell* does not explicitly state whether a reasonable interpretation must have been held contemporaneously.  Its language, however, indicates that contemporaneity is necessary.  *Purcell* refers to "the defendant's interpretation of an ambiguous term" and "its reasonable interpretation."  807 F.3d at 290.  Standing alone, these phrases could plausibly refer to either a contemporaneous interpretation or a current litigation position.  But if it were the latter, the court could have referred to "a reasonable interpretation" or "any reasonable interpretation."

---

[4] Norton cites a Third Circuit case that is supposedly "irreconcilable" with *Bahnsen*. Mem. at 23 n.9.  But that case supports a contemporaneity requirement by stating that "a defense on a reasonable, but erroneous, interpretation of a statute" requires that "a defendant's interpretation of that ambiguity *was* objectively unreasonable."  *United States v. Allergan, Inc.*, 746 F. App'x 101, 106 (3d Cir. 2018) (emphasis added).

*Purcell*'s statement that "subjective intent—including bad faith—is irrelevant when a defendant seeks to defeat a finding of knowledge based on its reasonable interpretation of a regulatory term," 807 F.3d at 290, does not mean that the reasonable interpretation need not have been held contemporaneously, as Norton argues. *See* Reply at 22 ("If subjective intent is irrelevant, so must be the question of when that intent was formed.").  There is nothing irreconcilable about requiring a defendant to have actually held its objectively reasonable interpretation at the relevant time, while ignoring whether that defendant subjectively desired to submit falsities.  Additionally, in noting that subjective intent is irrelevant for defeating a finding of knowledge based on a reasonable interpretation of a regulatory term, the *Purcell* court noted that "all this evidence might imply is that [defendant] did not hew to its reasonable interpretation in good faith." *Id.*  This phrasing implies that the court accepted that the defendant did hew to "its reasonable interpretation" at the time, whether in good faith or not, and that a reasonable interpretation must have been held contemporaneously to defeat a finding of knowledge.

Nowhere in *Purcell* or any other case cited by Norton does a court say that post-hoc interpretations are acceptable, and "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) ("Congress could not have intended such a result for those who *followed* an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been." (emphasis added)).[5]  To the contrary, there are cases indicating that contemporaneous adoption is required.

---

[5] Norton disparages the Government's citation of *Halo Electronics*, but *Halo* discussed *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), and *Safeco* formed the basis for the discussion of subjective intent in *Purcell*. *See Purcell*, 807 F.3d at 290 (citing *Safeco*, 551 U.S. at 70 n.20, for the proposition that "the Supreme Court clarified that subjective intent—including

*See, e.g.*, *United States v. Newman*, No. CV 16-1169 (CKK), 2017 WL 3575848, *8 (D.D.C.
Aug. 17, 2017) (explaining that "Defendants' argument about knowing falsity is incapable of
resolution at the pleading stage" because "the complaint . . . says nothing about whether
Defendant *held or acted on* any particular interpretation of the regulations at issue" (emphasis
added)).  If defendants were able to defeat scienter merely with interpretations adopted for
litigation, rather than those actually held and used, this Court would have expected that to be
stated clearly by a higher court.

Because Norton has not shown any aspect of a controlling decision related to scienter that
the Court failed to consider in its summary judgement opinion, Norton's motion for
reconsideration is denied with respect to scienter.

### C.  States' Claims

Regarding the States' claims, Norton briefly argues that "[b]ecause the government has
failed to adduce the necessary evidence as to the elements of materiality and scienter on its FCA
claims, . . . the State Claims fail as well for the same reasons."  As explained above, the Court
disagrees that reconsideration is warranted for those previous summary judgment rulings.
Therefore, to the extent Norton's argument for reconsideration of the States' claims relies on its
arguments about the federal claims, Norton's motion for reconsideration of the state claims is
denied.

Norton does not put forth any other argument that could support reconsideration of the
Court's prior summary judgment rulings regarding the States' claims.  Norton does not attempt
to demonstrate how the Rule 54(b) standard is met for these claims.  This section of Norton's

---

bad faith—is irrelevant when a defendant seeks to defeat a finding of knowledge based on its
reasonable interpretation of a regulatory term").

memorandum contains no citation to, or discussion of, any aspect of the Court's summary judgment opinion to show where the Court failed to consider relevant authority, nor any effort to demonstrate how any of the other justifications for reconsideration are met.  Norton's motion for reconsideration related to the States' claims is therefore denied.

## V.  CONCLUSION

For the foregoing reasons, Norton's Motion for Reconsideration is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 2, 2021                                    RUDOLPH CONTRERAS
                                                         United States District Judge