UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* LORI MORSELL, *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 12-800 (RC) |
| v. | : : | Re Document Nos.: | 280, 283 |
| NORTONLIFELOCK, INC. (f/k/a SYMANTEC CORPORATION), | : : : : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION *IN LIMINE*;
DENYING NORTON'S CROSS-MOTION TO MODIFY SCHEDULING ORDER**

### I. INTRODUCTION

This case concerns the Federal Government's Federal False Claims Act ("FCA") claims, and the related state claims of California, Florida, and Relator Morsell on behalf of New York against Defendant NortonLifeLock Incorporated ("Norton").[1] A bench trial before this Court is currently scheduled to begin February 28, 2022. *See* Min. Order of Oct. 7, 2021. The pending cross-motions seek to exclude certain demonstrative exhibits and to modify the pretrial scheduling order with respect to demonstrative exhibits. *See* United States' Mot. in Limine to Exclude Certain Demonstrative Exs. Identified by Norton ("Gov't Mot."), ECF No. 280; Norton's Mem. P. & A. Opp'n United States' Mot. in Limine & Supp. Cross Mot. to Modify Scheduling Order ("Norton Mot."), ECF No. 283-1. The United States filed a consolidated

---

[1] The Court stated in its opinion regarding motions for summary judgment that it would refer to the company previously known as Symantec Corporation by its new name going forward. *United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 266 n.1 (D.D.C. 2020). However, the Court has not replaced instances of "Symantec" in quotations.

Reply and Opposition, *see* United States' Reply in Supp. Mot. in Limine to Exclude Certain New Demonstrative Exs. & Opp'n Norton's Cross-Mot. to Revise Court-Ordered Schedule after the Fact ("Gov't Reply & Opp'n"), ECF Nos. 287–88, and Norton filed a reply, *see* Def. NortonLifeLock Inc.'s Reply in Supp. Cross-Mot. to Revise Demonstrative Schedule ("Norton Reply"), ECF No. 289.  For the reasons explained herein, the Court will grant in part and deny in part the Government's motion in limine and deny Norton's Cross-Motion to Modify the Scheduling Order.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The full background of this case has been laid out in previous opinions.  *See United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 267–76 (D.D.C. 2020); *United States ex rel. Morsell v. Symantec Corp.*, No. 12-cv-800, 2020 WL 1508904, at *1–3 (D.D.C. Mar. 30, 2020); *United States ex rel. Morsell v. NortonLifeLock, Inc.*, No. 12-cv-800, 2021 WL 3363446, at *1–2 (D.D.C. Aug. 3, 2021).  To briefly summarize, the Government and the States claim that Norton violated the FCA, common law, state false claims acts, and state contract law when, "in the process of setting pre-negotiated maximum prices for government purchasers with the General Services Administration, Symantec overcharged them by misrepresenting the existence of certain prices and discounts that were available to Symantec's private customers and by consequently failing to offer government purchasers the same low prices these customers received." *Morsell*, 471 F. Supp. 3d at 267.  Norton was "required to make certain representations and to provide details about their discounting policies" in their Commercial Sales Practices Format ("CSPs") disclosures, *id.* at 269, which were part of Norton's contract, *see id.* at 281–82.  Norton's contract also contained a Price Reduction Clause ("PRC"), which "ensures

that the Government's prices are reduced if [an agreed-upon] customer or category of customers is given lower pricing or increased discounts." *Id.* at 270.

On August 25, 2021, this Court issued an opinion granting in part and denying in part the parties' various motions in limine. *United States ex rel Morsell v. NortonLifeLock*, No. 12-cv-800, ECF No. 263 (D.D.C. Aug. 25, 2021) [hereinafter "Mem. Op."]. In relevant part, the Court granted the Government's motion to exclude the following evidence offered by Norton's expert Mr. Tucker: "opinions regarding whether sales for products having stock-keeping-unit numbers ("SKUs") not found on the relevant contract's pricelist should be included for damages; . . . opinions regarding which sales are appropriate to consider in damages calculations based on their terms and conditions; . . . whether order-level discount calculations are required in this case; . . . [and] opinions criticizing Government expert Dr. David A. Gulley merely for assuming liability for damages relating to the resellers' and distributors' sales." *Id.* at 2.

Following that ruling, a final pretrial conference was held on September 14, 2021.[2] At that hearing, the parties indicated that they would each be revising their previously filed demonstrative exhibits in light of the Court's motion in limine rulings. *See* 9/14/21 Tr. at 5:15–20, ECF No. 282. In accordance with the deadline set by the Court at that hearing, *id.* at 6:6–8, the parties filed revised demonstrative exhibits on September 22, 2021. *See* Notices of Filing Revised Demonstrative Exs., ECF Nos. 276–77.[3] Both parties agree that the demonstratives contested here correspond to the supplemental production served by Norton on the U.S. on

---

[2] Trial in this matter was at that time scheduled to begin on September 27, 2021, but was postponed in light of the ongoing health risks of the COVID-19 pandemic. *See* Minute Entry of September 20, 2021 hearing (granting Defendant's Motion to Continue Bench Trial, ECF No. 270).

[3] California also submitted its proposed demonstrative exhibits on that date. *See* Notice of Filing Demonstrative Exs., ECF No. 274.

October 9, 2021, which are found at Ex. 1 of the Government's Motion in Limine. *See* Ex. 1 of Gov't Mot. ("Oct. Demonstratives"), ECF No. 280-1.[4]

### III.  LEGAL STANDARD

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of [E]vidence expressly provide for motions *in limine*, the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'" *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "Motions *in limine* are designed to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010). But "a motion *in limine* should not be used to resolve factual disputes or weigh evidence." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (citation omitted). "Additionally, the gatekeeping requirement is substantially relaxed when the judge will serve as factfinder in a trial." *DL v. District of Columbia*, 109 F. Supp. 3d 12, 28 (D.D.C. 2015).

Federal Rule of Civil Procedure 37(c) provides that if a party "fails to provide information or identify a witness as required by Rules 26(a) or (e), the party is not allowed to use that information or witness to supply evidence. . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule also permits the Court to impose other appropriate sanctions in addition to, or instead of, exclusion. *See id.*; *see also Sherrod v. McHugh*, 334 F. Supp. 3d 219, 269 (D.D.C. 2018) ("A Rule 37(c)(1) exclusion, however, is an

---

[4] Although this additional production of demonstrative exhibits occurred after and in addition to the demonstratives filed with the Court on the September 22, 2021 deadline, the Government does not take issue with this supplemental production. *See* Gov't Mot. at 1, n.1. Finding no prejudice, and in the interest of avoiding further disputes, the Court will treat the October demonstratives as the operative submission of Norton's demonstrative exhibits and order Norton to file those exhibits in a separate docket entry.

'extreme sanction' that should be used sparingly." (quoting *Richardson v. Korson*, 905 F. Supp. 2d 193, 200 (D.D.C. 2012))). A party proposing to admit evidence that it failed to disclose pursuant to Rules 26(a) and (e) "bears the burden of showing substantial justification and lack of harm" to the opposing party. *Norden v. Samper*, 544 F. Supp. 2d 43, 49–50 (D.D.C. 2008) (citing *Coles v. Perry*, 217 F.R.D. 1, 5 (D.D.C. 2003)).

Rule 26(a) requires, among other things, pretrial disclosure of an expert report for any retained expert that contains "a complete statement of all opinions the witness will express and the basis and reasons for them," including "the facts or data considered by the witness in forming them" and "any exhibits that will be used to summarize or support" the expert's opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii). "The Rule . . . prevents experts from 'lying in wait' to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony." *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 28 (D.D.C. 2007). Rule 26(a) also requires "an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises," Fed. R. Civ. P. 26(a)(3)(A)(iii), made at least 30 days before trial "[u]nless the court orders otherwise," Fed. R. Civ. P. 26(a)(3)(B).

Local Civil Rule 16.4 provides that "the Court will issue a scheduling order governing future proceedings in accordance with Fed. R. Civ. P. 16(b)." L. Civ. R. 16.4(a). The scheduling order can be modified at any time by the Court, "upon a showing of good cause." *Id.* Federal Rule of Civil Procedure 16(d) also directs that after any conference held under that Rule, the Court "should issue an order reciting the action taken" that "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).

## IV.  ANALYSIS

### A.  The Government's Motion *in Limine*

Both parties revised their previously filed demonstrative exhibits in light of this Court's rulings on the prior motions in limine.  The Government has filed another motion in limine, however, arguing that Norton took advantage of the narrow leave granted by the Court to "introduce[] new opinions or opinions the Court excluded" in its demonstrative exhibits.  Gov't Mot. at 8.

#### 1.  Slides with Excluded Portions of Mr. Tucker's Opinion

The Court held in its prior opinion that because the Government's expert, Dr. Gulley, may permissibly rely on the assumptions provided by counsel, Norton's expert Mr. Tucker may not criticize him for having done so—specifically, for "assuming liability for damages relating to the resellers' and distributors' sales."  Mem. Op. at 18.  The Government now seeks to exclude several specific bullet points from Norton's October demonstratives that it believes include this impermissible opinion by Mr. Tucker.  Gov't Mot. at 8–9.

##### a.  *Slide 17, Bullet 3 & Slide 19, Bullet 2*

These two slides contain an identical phrase that the Government takes issue with: "[s]ignificant portions of Dr. Gulley's claimed PRC damages are based on unreasonable assumptions from an economic and business standpoint . . . ."  Gov't Mot. at 9; Oct. Demonstratives at 17, 19.  For its part, Norton argues that this phrasing is permissible because "Tucker's opinions are directed at the reasonableness of [the] assumptions themselves and not the fact that Gulley relied on them."  Norton Mot. at 14.

Norton's distinction toes the line rather closely.  If this were a jury trial, the Court would likely be concerned about whether the jurors would be confused by the difference between

6

criticizing an assumption and criticizing reliance on an assumption. But this is a bench trial, and the Court is cognizant of the distinction. Accordingly, it will not exclude these bullet points.

### b. Slide 20, Bullet 6

Similarly, Slide 20, Bullet 6 states that "Dr. Gulley's assumptions of what Symantec was required to do from 2007 to 2014 are unrealistic and are unreasonable from a business and economic standpoint." Gov't Mot. at 9, Oct. Demonstratives at 20. Here, the Court is persuaded that Norton has crossed the line. Although this sentence again criticizes the assumptions themselves, it does so with the possessive, referring to them as "Dr. Gulley's assumptions." *Id.* And the rather broad phrase "what Symantec was required to do from 2007 to 2014," while not specifically referencing any excluded topics, can only be understood in context to mean what Symantec was required to do *by the contract*—legal conclusions that the Court repeatedly refused to allow Mr. Tucker to testify on in its prior opinion. *See* Mem. Op. at 13 ("Whether the contract between GSA and Norton includes such products is not the proper subject of expert testimony . . . ."); *id.* at 14 ("[Tucker's] opinion on the economic importance of considering the terms and conditions is also dependent on such a comparison being required by the contract. He cannot properly testify to this legal conclusion.") (cleaned up). Norton must therefore strike this bullet point.

### 2. New Dr. Tucker Opinions

The U.S. also objects to specific portions of the October demonstratives that it claims include previously undisclosed opinions by Dr. Tucker. Gov't Mot. at 9–11. Specifically, it objects to Slide 89 of the October demonstratives as "an entirely new damages tabulation" that "cites no prior analysis of Mr. Tucker or any page or schedule of his three separate, voluminous expert reports," *id.* at 10, bullet point 3 of Slide 18 as "opin[ing] as to the industry definition of

the term 'practice'" for the first time, *id.*, and various instances in the October demonstratives with Mr. Tucker's opinion that "the United States lacks a damages calculation for its theories of liability based on Norton's false commercial sales practices ('CSP') disclosures," *id.* at 11.  The Court addresses each in turn.

### a. Slide 89 (Damages Tabulation)

Slide 89, which did not appear in the previous demonstrative set, is titled "Detail of Dr. Gulley's base method FPR Review Damages Calculation."  Oct. Demonstratives at 89.  It reproduces a portion of one of the Government's exhibits summarizing Dr. Gulley's damages calculations and breaks down the column of "calculated" damages to purportedly show how much of that number came from certain techniques.  *Id.*  Norton contends that "[i]t is not a damages tabulation at all, but a summary of Gulley's work . . . . [that] illustrates the significant impact that counsel's directions and analyses had upon Gulley's damages."  Norton Mot. at 18.  Both parties acknowledge that Mr. Tucker used data disclosed by Dr. Gulley to reach the numbers on this slide and that he had not previously disclosed that process or those calculated totals.  Gov't Mot. at 10; Norton Mot. at 18 & n.12.  Both parties also acknowledge that Mr. Tucker had previously disclosed his more general opinion "that a significant portion of Gulley's calculated damages are based on direction and analyses provided by government counsel rather than upon his own expert analysis, and/or are improper extrapolations."  Norton Mot. at 18; Gov't Reply & Opp'n at 7–8.

The Court agrees with the Government that the failure to disclose this data calculation was a violation of Rule 26(a), which required Mr. Tucker's reports to contain "the basis and reasons" for all of his opinions, "the facts or data considered" in forming them, and "any exhibits that will be used to summarize or support" them.  Fed. R. Civ. P. 26(a)(2)(B)(i–iii).  Slide 89

8

may provide illustrative support for Mr. Tucker's more general previous opinion, but the fact remains that he undertook a new process to reach those numbers. The new totals, the process he undertook to reach those totals, and Slide 89 summarizing the totals, were all required to be disclosed under Rule 26(a).

Failure to disclose this opinion means it cannot be used at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Norton implies that any failure to disclose was harmless because Mr. Tucker used Dr. Gulley's numbers to reach these totals, and his "method for doing so [was] not complicated." *See* Norton Mot. at 19. That is beside the point. The Government is correct that it was entitled to "the opportunity to depose Mr. Tucker on the process and assumptions used to generate these new figures," and Norton's untimely disclosure deprived it of that opportunity. Gov't Mot. at 10. Even a bench trial depends on the processes of the adversarial system, and the inability of the opposing party to depose Mr. Tucker on this opinion is not harmless. *See also Dahlberg v. MCT Transp., LLC*, 571 F. App'x 641, 647–48 (10th Cir. 2014) (affirming exclusion of an expert's demonstrative exhibits for failure to comply with Rule 26(a)); *Lasher v. Wipperfurth*, No. 16-cv-03158, 2018 WL 10911500, at *2 (D. Colo. Nov. 3, 2018) ("Plaintiff's failure to provide a timely and meaningful disclosure of the demonstrative exhibits is prejudicial . . . because it has deprived Defendant of the ability to question the expert in deposition about the accuracy of and methodologies he employed while creating the exhibits."). Nor does Norton suggest any justification for not having disclosed this particular opinion in Mr. Tucker's prior reports. The Court therefore finds that Norton's failure to disclose the totals on Slide 89 was neither justified nor harmless.

The fact that Slide 89 is a "demonstrative exhibit" does not make a meaningful difference here. *Minebea*, which both parties cite, is instructive. The court in that case concluded that the

plaintiff "was under an obligation under Rule 26(a)(2)(B) . . . to provide any exhibits used as summaries or illustrative aids in support of the opinions and conclusions contained in [the] Expert Report at the time it submitted the report itself" and excluded new exhibits as untimely even though they were demonstrative exhibits and intended for use at a bench trial. *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 12 (D.D.C. 2005). It did agree to consider exhibits that had not been filed with the court, "but only to the extent that they *accurately* reflect previously presented information" in the first expert report. *Id.* at 13 (emphasis in original). The issue here is not only that Slide 89 is new, but that the new calculations on it do not accurately reflect Mr. Tucker's previously disclosed report. The Court will therefore exclude Slide 89.

### b. Slide 18, Bullet 3 ("Practice" as an Industry Term)

The Government next objects to the bullet point 3 on Slide 18, which reads: "I understand that Symantec's practice is to provide non-published discounts for various reasons. The provision of a particular discount is not viewed in the industry as a practice, rather it is the application of Symantec's practice."[5] Oct. Demonstratives at 18. That bullet point had previously read: "The assertion that Symantec did not properly disclose its non-published discounting practice is unsupported and incorrect." July Demonstratives at 17, Ex. 2 of Gov't Mot., ECF No. 280-2. Norton's position is that it made this change in order to comply with the spirit of this Court's prior opinion by disclaiming any legal conclusion about "whether Symantec's disclosures were proper" and instead focusing on general practices. Norton Mot. at

---

[5] The first sentence of this bullet point, "I understand that Symantec's practice is to provide non-published discounts for various reasons," does not appear to be the point of contention between the parties. The Court takes no issue with it, as it is consistent with this Court's prior reasoning allowing experts to rely on and describe assumptions provided by counsel. *See* Mem. Op. at 17 (allowing statements "more naturally read as reflecting assumptions provided by [] counsel").

6. But the Government argues that Tucker's invocation of what the industry defines as "practice" is inappropriate given that he offered only his personal opinion of the term in his report and depositions and admitted that he had not "conduct[ed] any industry-wide survey, research, or work to form his opinions." Gov't Mot. at 10–11.

The second sentence of this bullet point is somewhat ambiguous as to whether it can in fact be understood as defining "practice" in the industry, as the Government characterizes it. And Norton points out that Mr. Tucker did previously disclose his opinion regarding the difference between the existence of a practice and its application. Norton Mot. at 5. Finally, while Mr. Tucker stated that he had not conducted any industry-wide research, instead relying on his own experience, his expert report does claim knowledge of industry practices. *See, e.g.*, Expert Rep. Avram Tucker, May 18, 2018 ¶¶ 7, 13, Ex. 4 of Norton Mot., ECF No. 283-4. Given this ambiguity, "and because, in a bench trial, the Court can easily discount the weight of any testimony . . . that goes beyond the proper scope of [the expert's] expertise," the Court will allow the text in this bullet point. *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, No. 18-cv-508, 2019 WL 6036121, at *4 (D.D.C. Nov. 14, 2019); *see also DL*, 109 F. Supp. 3d at 29 ("[T]hese concerns go to the weight, not the admissibility, of his report, especially in a bench trial where there is no concern about jury confusion or prejudice.").

c. *Slide 17, Bullet 5 & Slide 20, Bullet 5 (CSP Disclosure Damages)*

Finally, the Government moves to exclude two bullet points stating an opinion by Mr. Tucker that "Dr. Gulley's PRC calculations do not represent CSP disclosure damages." Gov't Mot. at 11. The Government acknowledges that "Norton included the framework of this misguided opinion in its July Demonstratives" but believes that Norton's revisions "doubl[ed]

11

down to include a flat opinion" that "underscores the previously undisclosed nature of Mr. Tucker's new non-expert opinion." *Id.*

The Government's objections to this statement are twofold: one, that Mr. Tucker did not disclose this opinion as required by Rule 26, and two, that he is unqualified to deliver it. *Id.* at 14–15. The Court can quickly dispense with the second argument, as it goes to the proper weight that should be afforded to Mr. Tucker's testimony. "[I]n a bench trial, the Court can easily discount the weight of any testimony . . . that goes beyond the proper scope of [the expert's] expertise." *Garcia Ramirez*, 2019 WL 6036121, at *4. The Court's gatekeeping function in admitting expert testimony "is substantially relaxed when the judge will serve as factfinder in a trial." *DL*, 109 F. Supp. 3d at 28.

It is less clear whether Mr. Tucker has previously disclosed this opinion. As the Government explains, it provided Dr. Gulley with "two sets of commercial transactions . . . as assumptions" for which he "was tasked with performing damages calculations, not explaining the legal and factual theories underpinning those calculations." Gov't Mot. at 13. Norton points to Mr. Tucker's critique of those transaction sets as having "made no quantifiable connection between the alleged false CSPs and the final negotiated contract prices" in his surreply report relating to Dr. Holt, who created them. Norton Mot. at 12–13. Norton also points out that Mr. Tucker further elaborated on that opinion in his deposition. *Id.* at 13.

While it is not entirely free from doubt that those portions of the expert report directly articulate Mr. Tucker's opinion regarding Dr. Gulley's damages calculations, they come close enough. An "expert report is not the end of the road, but a means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own." *Robinson v. District of Columbia*, 75 F. Supp. 3d 190, 195 (D.D.C. 2014)

(cleaned up).  An expert report need not identify every potential variation of an opinion by the exact wording that will be used at trial.  This opinion was articulated approximately enough that the Government asked about it in Mr. Tucker's deposition and concedes that that "the framework" of this opinion was present in Norton's July demonstratives.  Gov't Mot. at 11.  Because Mr. Tucker disclosed enough of this opinion to satisfy Rule 26(a)(2), and because this is a bench trial with lessened risk of confusion or misleading the jury, the Court declines to exclude this language from the demonstratives.

### B. Norton's Cross-Motion to Modify Scheduling Order

In addition to opposing the Government's Motion in Limine, Norton filed a cross motion asking the Court to modify its Scheduling Order to "order the parties to disclose final demonstratives 72 hours in advance of their expected use."[6]  Norton Mot. at 21.  The pretrial order in this case initially required the parties to submit demonstrative exhibits on June 4, 2021—about two months in advance of the trial that was at the time scheduled to begin on August 2, 2021.  *See* Pretrial Order at 2, ECF No. 194.  That order has since been modified in part on multiple occasions, including to clarify that the deadline for demonstrative exhibits

---

[6] The parties additionally disagree about whether slides used during opening statements qualify as "demonstrative" exhibits.  *See* Gov't Reply & Opp'n at 3, n.2.  Slides used during opening statements serve a similar function to demonstrative exhibits in that they are "illustrative aid[s]" "used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence" but that have not themselves been admitted into evidence and that "may reflect to some extent, through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent." *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998).  "This type of exhibit is more akin to argument than evidence" and may be considered under Federal Rule of Evidence 611.  *Id.* (cleaned up); *Minebea Co., Ltd. v. Pabst*, 231 F.R.D. 1, 3 (D.D.C. 2005).  The Court therefore agrees with Norton that these slides should have been disclosed along with the demonstrative exhibits and will adopt the Government's proposed solution of limiting the United States' "visual presentation during opening remarks to call-outs, excerpts, and previously disclosed demonstrative exhibits."  Gov't Mot. at 8, n.6.

included summary exhibits under Federal Rule of Evidence 1006, *see* Order of Jan. 11, 2021, ECF No. 207 at 1, and to reset the deadline to file demonstrative and summary exhibits following the first postponement of trial in this case to July 30, 2021, which at that time was again about two months before the scheduled start of trial on September 27, 2021, *see* Minute Order of July 17, 2021.

Federal Rule of Civil Procedure 16(b) provides that the Court may modify a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 143 (D.D.C. 2013) ("[D]istrict court case law makes clear that once the court enters a scheduling order, that schedule can only be modified with the court's consent and with good cause shown."). Good cause generally "requires the party seeking relief to show that the deadlines cannot reasonably be met despite its diligence." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011) (cleaned up). Here, all parties met the deadline for exchanging and filing demonstrative exhibits, meaning that an inability to meet a deadline despite diligence is not directly at issue. *See* Norton Reply at 1–2. Rather, Norton argues that "the judicial economy and efficiency that would be served by modifying the demonstrative exhibit deadline to align with the progress and realities of trial easily satisfies the 'good cause' standard under Rule 16." *Id.* at 4.

A district court's "broad discretion in managing its docket" may sometimes extend to the admission of untimely demonstratives for equitable reasons. *See Grimes v. District of Columbia*, 794 F.3d 83, 90 (D.C. Cir. 2015) ("[A] district court enjoys broad discretion in managing its docket and determining the order in which a case should proceed."). As Norton points out, this Court allowed certain demonstratives to be admitted as Rule 1006 summaries despite having been updated and submitted after the exhibit deadline in a recent bench trial. Norton Reply at 4

(discussing *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 471 F. Supp. 3d 88, 138–39 (D.D.C. 2020)).  But Norton fails to acknowledge that in addition to a lack of prejudice, there were other equitable considerations underlying that decision, primarily that "the Government also supplemented its own exhibits after the deadline and, more importantly, . . . the Government updated its production of some of the data underlying these demonstrative exhibits during the second week of trial."  Minute Order of January 9, 2020, *Garcia Ramirez*, 18-cv-508 (D.D.C. Jan. 9, 2020).

No such equitable considerations support a wholesale modification of the deadline for all demonstrative exhibits at this stage, of which there are many.  Norton does not point to any specific demonstrative exhibit that requires updating at this stage, rather it speculates that "the parties will almost certainly be required to revise demonstratives used by expert witnesses based upon the testimony and evidence introduced (and excluded) during trial."  Norton Mot. at 20.  The purpose of the requirement that the parties exchange and file proposed demonstrative exhibits in advance of the pretrial conference is to encourage the parties to resolve any disagreements without the Court's intervention and to allow for resolution of as many disputes as possible in advance of trial.  The Court does not foreclose the possibility that under exceptional circumstances the parties may need to revise specific demonstratives between now and the start of trial, but it fails to see any gains in judicial efficiency by allowing the parties to continuously revise demonstratives on a rolling basis throughout trial and dealing with last-minute disagreements that could have been resolved weeks earlier.  The Court therefore declines to modify the pretrial order as proposed by Norton.

## V.  CONCLUSION

For the foregoing reasons, the Government's motion (ECF No. 280) is **GRANTED IN PART AND DENIED IN PART**.  The Government's motion is granted to the following extent: (1) Norton must strike Bullet 6 on Slide 20 of the October Demonstratives and (2) Slide 89 of the October Demonstratives is excluded. Norton's cross motion to modify the scheduling order (ECF No. 283) is **DENIED.**  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 31, 2022                                                                RUDOLPH CONTRERAS
                                                                                                           United States District Judge